UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMITA FULGHEN,

     Plaintiff,

                                  Case No. 09-13895

v.

                                  Honorable Patrick J. Duggan

JOHN E. POTTER, United States
Postmaster General,

     Defendant.

_____/

### OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 5, 2010.

    PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On October 2, 2009, Damita Fulghen ("Plaintiff") filed this *pro se* action against

John Potter, United States Postmaster General, alleging employment discrimination on the

basis of religion. Plaintiff seeks recovery under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.* Presently before the Court is Defendant's Motion

for Summary Judgment, filed on June 15, 2010. The Court dispenses with oral argument

pursuant to E. D. Mich. LR 7(f)(2), and for the reasons stated below, grants Defendant's

Motion.

### I. Factual and Procedural Background

In October 2004, Plaintiff was employed as a Customer Service and Sales Associate at the United States Postal Service store in the Penobscot Building, located in Detroit, Michigan. Pl.'s Resp. Br., Doc. 23 at 5.[1] Plaintiff's job duties required her to serve customers at the store's window.

On the morning of October 27, 2004, Plaintiff arrived at work at 8:00 a.m. *Id.* at 8. Around 8:20 a.m., Plaintiff realized that she did not have the key to open her till. *Id.* Although a spare key was located on-site, only a Supervisor or "T-6 Lead Clerk" was authorized to access it. *Id.* At the time, neither Plaintiff's Supervisor, Debra Harris, nor her T-6 Lead Clerk, Vicky Strickland, had arrived at the store. *Id.* By 8:30 a.m., other clerks had arrived and began serving customers at the window. *Id.* Plaintiff continued to wait for either Harris or Strickland to arrive. *Id.* While waiting, Plaintiff did some "odd jobs" around the office and read her "Bible aid," a religious book, in the employee locker area. *Id.* Plaintiff is a Jehovah's Witness, and asserts that daily reading of this text is a practice of her religion. Pl.'s Supplemental Br., Doc. 34 at 35-36.

Another clerk, Gail Johnson, arrived at approximately 8:45 a.m. and started working at the customer window. Pl.'s Resp. Br., Doc. 23 at 8. Around 9:10 a.m., Johnson walked between the locker area and the window several times, observing Plaintiff reading her book. *Id.* at 9. Plaintiff claims that Johnson called Harris to report that Plaintiff was reading spiritual literature instead of working. *Id.*

At approximately 9:30 a.m., Harris called to speak with Plaintiff. *Id.* When Plaintiff

---

[1] Because some pages of Plaintiff's briefs are unnumbered, this Opinion and Order will use the page numbers established by the ECF filing system when citing Plaintiff's briefs.

picked up the phone, Harris began, "Now Damita..." *Id.* Based on the tone in Harris's voice, Plaintiff assumed that Harris had been told that Plaintiff was reading spiritual literature instead of working at the window. *Id.* Plaintiff claims that Harris was angry. *Id.* Plaintiff immediately replied that she would call Harris back, and hung up the phone. *Id.* at 38-39. She never returned Harris's call, and instead performed more "odd jobs" until approximately 10:20 a.m. *Id.* at 10.

Meanwhile, Harris had contacted Acting Manager Cheryl Jones[2] about Plaintiff's actions. Def.'s Br. 3. Harris was working at another location but was about to leave for the day, and asked Jones to determine why Plaintiff was not working. *Id.* Jones claims that she tried calling Plaintiff several times, but that Plaintiff would not answer the phone. *Id.* Plaintiff claims that she was unaware of Jones's calls. Pl.'s Resp. Br., Doc. 23 at 16. Jones contacted Charles Sutton, a Customer Service Supervisor at the Postal Service's Gratiot office, to accompany her to the Penobscot Building. Def.'s Br. Ex. 8, at 3. Jones also arranged for Postal Police Officers Mark Kieltyka and Larry Elliott to meet them at the Penobscot Building. Def.'s Br. Ex. 6, at 1.

At approximately 10:20 a.m., Plaintiff headed to the back of the office to take a break. Pl.'s Resp. Br., Doc. 23 at 10. A few minutes later, Officer Kieltyka entered through the office's back entrance. *Id.* He asked, "where's the clerk reading the Bible?" *Id.* at 10-11. Plaintiff stood up with her book in hand, replying, "I have a blue spiritual book, but I don't know what clerk is reading a Bible." *Id.* at 11. At about this time, Jones,

---

[2] Cheryl Jones is also known as Cheryl Chaney-Hodge.

Sutton, and Officer Elliott arrived. *Id.* Plaintiff claims that she explained that she was not working because she forgot her key, and was waiting for Harris or Strickland to arrive so she could obtain the spare key. *Id.* Defendant claims that Plaintiff grew irate and belligerent upon seeing Jones, yelling, "I know that you did not bring the police here" and "[n]o you didn't bring the police here!" Def.'s Br. Ex. 2, at 1. Defendant also claims that when Jones asked why Plaintiff was not working, Plaintiff yelled, "[i]f I had my key, then maybe I could!" *Id.* Jones gave Plaintiff a "Request for Leave" Form, asking her to "choose her leave" and exit the building. Pl.'s Resp. Br., Doc. 23 at 12. Jones allegedly explained that Plaintiff was being placed on leave because she did not want to work and was insubordinate. *Id.* Defendant claims that Plaintiff responded by yelling, "You are wrong and you are going to pay for it! Not only are you going to pay now, but you will also pay for it later!" Def.'s Br. Ex. 6, at 1. When asked what this meant, Plaintiff allegedly did not respond. *Id.* Jones claims that she perceived this as a threat, and informed Plaintiff that she was subject to emergency placement in off-duty status. *Id.* Sutton testified that Plaintiff grabbed Jones's wrist, and that Plaintiff said to Jones, "I don't know how you sleep at night." Def.'s Br. Ex. 8, at 5-6. Plaintiff admits saying she did not know how Jones could sleep at night, but denies grabbing Jones's wrist. Pl.'s Resp. Br., Doc. 23 at 12-13. Officers Kieltyka and Elliot escorted Plaintiff from the premises and deactivated her badge access. *Id.* at 13.

Plaintiff filed a grievance through her union on November 16, 2004, alleging that her emergency placement in off-duty status was unwarranted and punitive. Plaintiff remained in off-duty status until November 23, 2004. Def.'s Br. Ex. 9. The parties settled the

grievance on December 16, 2004, and Plaintiff was given 120 hours' pay for lost wages. *Id.* On December 22, 2004, Plaintiff was notified by Sutton and Jones that she would be suspended for fourteen days, beginning January 4, 2005. Def.'s Br. Ex. 2, at 1. Plaintiff filed a second grievance, challenging the suspension as untimely. Pl.'s Resp. Br., Doc. 23-1 at 18. This grievance was settled on January 18, 2005, rescinding the notice of suspension. *Id.* at 12. The grievance settlement agreement was later amended to provide Plaintiff with back pay for lost wages. *Id.*

On January 29, 2005, Plaintiff filed an administrative discrimination complaint, alleging that she was placed in off-duty status because of her religion. Def.'s Br. Ex. 10, at 1. On February 10, 2005, Plaintiff filed a second administrative discrimination complaint, alleging that she was given the notice of suspension in retaliation for engaging in protected Equal Employment Opportunity activity. *Id.* at 1-2. These complaints were investigated at a hearing on February 1, 2007, before Administrative Judge David Treeter of the Equal Employment Opportunity Commission. *Id.* at 2.

On April 30, 2007, Administrative Judge Treeter issued a decision, finding that Jones had placed Plaintiff in off-duty status for both lawful and unlawful reasons. *Id.* at 6-7. Administrative Judge Treeter determined that Jones "was motivated both by [Plaintiff's] practice of reading the religious book and [Plaintiff's] refusal to work while on the clock." *Id.* at 7. He also found that Plaintiff engaged in threatening behavior that provided Jones with another reason to place Plaintiff in off-duty status. *Id.* at 10. He ruled that the threatening behavior was "after-acquired evidence" supporting the agency's decision, and while it did not release the agency from liability, it limited Plaintiff's entitlement to relief.

*Id.* at 11. Administrative Judge Treeter ordered the Postal Service to post a notice to its employees regarding its non-discrimination policy and provide training to Jones regarding her obligations under Title VII. *Id.* at 13-14. He ruled, however, that Plaintiff was ineligible for back pay or compensatory damages. *Id.* at 13. As for the retaliation claim, Administrative Judge Treeter concluded that Plaintiff had set forth no evidence showing that the Postal Service's reason for the suspenion was a pretext. *Id.* at 11-12. Plaintiff therefore did not demonstrate that the Postal Service retaliated against her by issuing the suspension. *Id.* at 12.

The Postal Service issued a "Notice of Final Action" dated May 30, 2007, disagreeing with the administrative judge's conclusions, but agreeing to post the notice and provide the required training. Def.'s Br. Ex. 11, at 1-3. Plaintiff filed this action on October 2, 2009, seeking review of her discrimination claim. On June 10, 2010, Plaintiff moved to amend her Complaint to state that Defendant's discrimination resulted in emotional distress and a hostile work environment. This Court granted leave to amend in an Opinion and Order dated July 7, 2010.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule

56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Plaintiff's Religious Discrimination Claim

#### A. Governing Law

Title VII prohibits an employer's discrimination against individuals based on the characteristics of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiffs may allege "disparate treatment," where the employer treats some people less

favorably than others because of these protected characteristics. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S. Ct. 513, 519 (2003). Liability in such a case depends on whether the protected trait actually motivated the employer's decision. *Id.* A plaintiff need not demonstrate that the protected trait was the *only* factor in the decision; it is sufficient to show that it was "a motivating factor." 42 U.S.C. § 2000e-2(m).

Title VII plaintiffs may use either direct or circumstantial evidence to prove their case. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100, 123 S. Ct. 2148, 2154 (2003). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence, by contrast, is evidence from which the jury may infer discriminatory intent. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Absent direct evidence of discriminatory intent, a plaintiff's claims are subject to a burden-shifting analysis:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)) (citations omitted).

**B. Application**

Plaintiff alleges disparate treatment under Title VII, asserting that she was placed in off-duty status based on her religion. Plaintiff has produced no direct evidence of discriminatory intent. She relies instead on circumstantial evidence, arguing that she was treated less favorably than similarly situated non-Jehovah's Witnesses. Pl.'s Resp. Br., Doc. 23 at 24-25. Accordingly, the Court applies the burden-shifting analysis.

Defendant argues that summary judgment is appropriate because Plaintiff has failed to establish her prima facie case. To prove a prima facie case of religious discrimination, a Title VII plaintiff must show: "(1) that he was a member of a protected class, (2) that he experienced an adverse employment action, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). Defendant does not appear to dispute the first three elements of the prima facie case, but contends that Plaintiff has identified no similarly situated employees who were treated differently.

"The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). It is sufficient to demonstrate that the employees are similar in all relevant respects. *Id.* "In the disciplinary context, . . . the plaintiff and his proposed comparator must have engaged in acts of 'comparable seriousness.'" *Id.* (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th

Cir. 2002)). Courts may consider differentiating or mitigating circumstances that distinguish employees' conduct. *Id.*

Plaintiff's proposed comparators are easily distinguishable. In response to Defendant's interrogatories seeking a list of comparison employees who were treated more favorably, Plaintiff listed only Julie Jones, a fellow clerk. Def.'s Br. Ex. 12. Plaintiff asserted that Julie Jones "reads romantic and illicit novels daily on her breaks, lunch, and the work room floor," and that she "has never been disciplined for reading her choice of books." *Id.* This comparison ignores obvious mitigating circumstances, as Plaintiff has not alleged that Julie Jones reads her books at times when she is required to be working. Plaintiff also has not alleged that Julie Jones engaged in insubordinate behavior, such as abruptly terminating a phone call from her supervisor. Plaintiff's actions undermine any proposed comparison to Julie Jones.

In her Response Brief, Plaintiff identifies Charles McColla, a letter carrier who worked for Cheryl Jones, as a similarly situated employee. In June 1998, Cheryl Jones heard McColla using profane language on the workroom floor. Pl.'s Resp. Br., Doc. 23-1 at 30. When she confronted him, McColla refused her direct orders and continued to use profane language. *Id.* McColla's supervisor, Thomas Shumate, placed him on administrative leave immediately. *Id.* at 31. McColla was later informed that management had proposed his removal from the Postal Service based on this incident. *Id.* at 30. Plaintiff claims that the proposed removal never occurred. *Id.* at 25. Plaintiff has failed to demonstrate that discipline proposed for McColla, which included placement on administrative leave and removal from the Postal Service, was more favorable than

emergency placement in off-duty status and a fourteen-day suspension. Although McColla's notice of removal was rescinded, Plaintiff's notice of suspension was rescinded and she received back pay for her time in off-duty status. The comparison fails to demonstrate that a similarly situated employee was treated more favorably.

Plaintiff has failed to establish a prima facie case of disparate treatment, as she has produced no evidence showing that a similarly situated employee was treated more favorably. Because Plaintiff carries this burden, the Court grants summary judgment for Defendant on Plaintiff's religious discrimination claim.

## IV. Plaintiff's Claims of Hostile Work Environment and Emotional Distress

Plaintiff claims that discrimination against her resulted in a hostile work environment and emotional distress. "Discrimination so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (alteration in original). To establish a prima facie case of hostile work environment based on religion, a plaintiff must establish (1) that he is a member of a protected class; (2) that he was subjected to unwelcome religious harassment; (3) that the harassment was based on religion; (4) that the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Id.* In determining whether the environment is one that a reasonable person would find hostile, courts consider "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id.* The conduct must be "extreme" to constitute a change in the terms and conditions of employment. *Id.* at 512-13. Plaintiff has failed to allege any conduct that would satisfy this standard. The only conduct she refers to even remotely concerning religion was Officer Kieltyka's asking which clerk was reading the Bible. This conduct is plainly insufficient to constitute harassment; Plaintiff's hostile work environment claim fails as a matter of law. Her emotional distress claim fails for the same reason.

## V. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Vanessa Miree Mays
Damita J. Fulghen
18651 Marlowe
Detroit, MI 48235